IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNEST A. CRUMP, JR., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 08-506-SLR |
| | ) |
| CORRECTIONAL MEDICAL SERVICES, | ) |
| | ) |
|       Defendant. | ) |

Ernest A. Crump, Jr., Smyrna, Delaware. Pro se Plaintiff.

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston, LLC, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: August 25, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 11, 2008, Ernest A. Crump, Jr. ("plaintiff"), a pro se plaintiff proceeding in forma pauperis, filed the present action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate of the James T. Vaughn Correctional Center ("VCC"), alleges that defendant Correctional Medical Services ("CMS") violated his Eighth Amendment Rights by failing to perform a colonoscopy on him after a medical grievance was ultimately decided in his favor.[1] (D.I. 9 at 4) Plaintiff further alleges intentional and negligent infliction of emotional distress because of the failure to perform the procedure and seeks compensatory and punitive damages from CMS. (*Id.*) In response to plaintiff's action, CMS has filed a motion to dismiss plaintiff's complaint for failure to state a claim and lack of subject matter jurisdiction. (D.I. 33) Also before the court are plaintiff's motions to appoint counsel and compel CMS to answer interrogatories. (D.I. 36, 41) For the reasons set forth below, plaintiff's case is dismissed.

## II. BACKGROUND

Plaintiff submitted a sick call slip in July 2005 requesting to be tested for both prostate and colon cancer. (D.I. 9, ex. 1) Three months after submitting the request, plaintiff was given a prostate exam. (*Id.* at 4) On January 8, 2006, plaintiff filed a medical grievance because he had not yet received the results of his prostate exam and, although he was told he was scheduled to receive a colonoscopy, he had not yet received that procedure. (*Id.*) On January 20, 2006, plaintiff had an informal resolution

---

[1]The original complaint named six defendants. (D.I. 2) Five of those defendants, all of which were employees of the Delaware Department of Correction, have since been dismissed from this lawsuit. (D.I. 16, 52) Only CMS remains.

discussion with CMS staff member Christine Malaney in which plaintiff was given the results of his prostate exam. (*Id.*, ex. 2) The report following from the informal resolution noted that plaintiff did not have any order for a colonoscopy scheduled, that his hemoccult test for blood in his stool was negative, and that he wished to "go to the next level" with his grievance. (*Id.*, ex. 2) Plaintiff participated in a hearing regarding his grievance in front of the Medical Grievance Committee ("MGC") on March 20, 2006 in which the MGC denied plaintiff's requested relief of a colonoscopy. (*Id.* at 4) The report from that hearing indicated that a colonoscopy was not warranted at that time because plaintiff's hemoccult test was negative and that there were "no sick calls noted for blood in stool." (*Id.*) The report further recommended hemorrhoidal cream for plaintiff. (*Id.*)

Plaintiff appealed the decision by the MGC to the Bureau Grievance Officer ("BGO") on March 24, 2006. (*Id.*) In his appeal request, plaintiff explained that his request for a colonoscopy was denied

> even though he is a high risk factor. His high risk factors are: 1) African American male, 2) have a family history of colon cancer - uncle, 3) both parents died from cancers - father - lung cancer - mother - liver cancer. Grievant also had symptoms such as: constipation, abdominal pain, cramps and blood in stool. Grievant has hemorrhoids, but hasn't had blood in his stool in 5 years and don't believe his recent blood in his stool is hemorrhoids related. All of the above stated facts are already in my medical records and prevention and survival depend on early detection and colonoscopy examination is the only definitive test, therefore I should have been given a colonoscopy.

(*Id.*, ex. 5) On September 27, 2006, the BGO decided the appeal in favor of plaintiff receiving a colonoscopy and the Bureau Chief upheld the BGO's decision on November 29, 2006. (*Id.* at 4) Nearly two years later on June 27, 2008, plaintiff, still yet to receive

2

his colonoscopy, wrote a letter to Warden Perry Phelps ("Phelps") requesting Phelps to direct CMS to perform a colonoscopy on plaintiff. (*Id.*)

Plaintiff asserts that, as a result of being "immensely worried about his prognosis for colon cancer," he suffered from anxiety, depression, and loss of appetite and sleep. (*Id.*) Plaintiff had to seek, and did in fact receive, mental health counseling for his symptoms and he asserts that he has "suffered irreparable stress and mental anguish." (*Id.*) In his complaint, plaintiff requests as remedies: (1) injunctive relief, in the form of the court directing CMS to provide a colonoscopy; (2) compensatory damages for intentional and negligent infliction of emotional distress and mental anguish; and (3) punitive damages for "failure to exercise that degree of care which a Department of Correction Organization and Medical Provider of professional prudence would exercise under the same circumstances." (*Id.* at 5-6)

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 554-55 (2007) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do.'" *Id.* (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d. Cir. 2008) (citations omitted). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted).

## IV. DISCUSSION

### A. § 1983 Claim

To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106; *accord White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate that: (1) he had a serious medical need; and (2) the defendant was aware of this need and was deliberately indifferent to it. *See West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978); *see also Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. *See Estelle*, 429 U.S. at 105.

4

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D. N.J. 1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

Plaintiff asserts that he suffers from a serious medical need because, as an African American male over the age of forty and with a family history of colon cancer, he is "in a well established . . . high risk group for colon cancer." (D.I. 56 at 1) Contrary to the above directives, plaintiff has not stated facts suggesting that a physician has diagnosed him with a high risk for colon cancer requiring a colonoscopy. Nor does plaintiff's membership in an allegedly high-risk group necessarily lead to the conclusion that he requires a physician to give him a colonoscopy or any other medical exam. Similarly, plaintiff does not allege that not receiving his colonoscopy has resulted in long-term injury or loss.[2] Plaintiff's subjective belief that he is at risk for colon cancer does not fall into the category of a serious medical need as contemplated in *Estelle*.

Because liability in a § 1983 claim cannot be based on respondeat superior or vicarious liability, a corporation under contract with the state, such as CMS, cannot be held liable for the acts of its employees and agents under those theories. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). CMS could be held

---

[2]In fact, as he indicates in the record, plaintiff did receive his requested colonoscopy after he initiated this lawsuit. (D.I. 54 at 3)

5

directly liable for the acts of its employees, however, if those acts resulted from a policy or custom of CMS. *See id.* In order to proceed under this direct liability theory, the existing practice must be so likely to result in the violation of constitutional rights that CMS can reasonably be said to have been deliberately indifferent to plaintiff's serious medical need. *See id.* "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Plaintiff fails to identify either a policy or a custom on the part of CMS that could have resulted in the alleged constitutional violation. Moreover, in his complaint, plaintiff does not allege any facts that could be construed as a CMS policy or custom.[3] Therefore, defendant's motion to dismiss is granted as to plaintiff's § 1983 claim.

### B. State Law Claims

Plaintiffs complaint, broadly construed, represents both federal and state law claims. In addition to the § 1983 claim, plaintiff requests relief for intentional infliction of

---

[3]The court declines to consider in this regard the United States Department of Justice investigation identified by plaintiff in response to defendant's motion to dismiss. (D.I. 56 at 2)

emotional distress and medical negligence. Both of the remaining claims are grounded in state law. According to 28 U.S.C. § 1367(a),

> [i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

As a result, this court is permitted to exercise supplemental jurisdiction over plaintiff's state law claims. However, 28 U.S.C. § 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
>
> (1)   the claim raises a novel or complex issue of State law,
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)   the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

As this court is dismissing plaintiff's federal law claim for failure to state a claim upon which relief can be granted, only state law claims for intentional infliction of emotional distress and medical negligence remain. The court does not have original jurisdiction over these remaining claims and, pursuant to subsection 3 of 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

### V. CONCLUSION

For the reasons stated above, the court will grant defendant's motion to dismiss. The court will deny as moot plaintiff's motions to appoint counsel and to compel defendant to answer interrogatories. An appropriate order shall issue.